Monsanto v. Mike Davis
















IN THE
TENTH COURT OF APPEALS
 

No. 10-02-158-CV

     MONSANTO COMPANY, ET AL.,
                                                                         Appellants
     v.

     MIKE DAVIS, ET AL.,
                                                                         Appellees
 

From the 82nd District Court
Falls County, Texas
Trial Court # 32,404-A
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Monsanto Company, Delta and Pine Land Company and D&M Partnership (Defendants),
bring this interlocutory appeal from the trial court’s certification of a class action brought by Mike
Davis and others (Plaintiffs). Defendants claim in fourteen points that the court erred in
determining that Plaintiffs’ suit should be maintained as a class action. Because the issue of
typicality is dispositive, we will not address further points. We reverse the order and remand for
further proceedings consistent with this opinion.
BACKGROUND
      This is the third time that a dispute between these Plaintiffs–a group of Texas cotton
farmers–and these Defendants–manufacturers and distributors of genetically enhanced cotton
seed–arising out of the underlying litigation, has reached us. In the first, we considered a petition
for a writ of mandamus brought by Defendants to avoid the production of certain documents for
which they claimed a privilege. We conditionally granted the writ of mandamus. In re Monsanto,
998 S.W.2d 917 (Tex. App.—Waco 1999, orig. proceeding). In the second, we considered an
interlocutory appeal from the trial court grant of class certification brought by Defendants because
“dispositive” evidence which they produced was not allowed into the record or considered by the
trial court during the certification hearing. Monsanto Co. v. Davis, 25 S.W.3d 773 (Tex. App.—
Waco 2000, pet. dism’d w.o.j.). In that case, we concluded that the trial court abused its
discretion by refusing to consider the evidence which Defendants proffered, and reversed and
remanded to the trial court for further proceedings consistent with that opinion. Monsanto, 25
S.W.3d at 789.
      This lawsuit had its roots in the 1996 cotton planting season. In the fall of 1995, Monsanto
placed on the market a new cotton seed with the Bollgard gene, which was genetically engineered
to produce an insect-fighting protein. This technology was patented and marketed under the name
Bollgard. According to Monsanto’s promotional material, a cotton plant with the Bollgard gene
would have the ability to fend off common and very destructive pests such as the tobacco
budworm, the cotton bollworm, and the pink bollworm.
      A farmer was charged two separate charges for the use of the Bollgard cotton seed–the
purchase price for the seed and a per-acre-planted “technology licensing fee.” Most of the farmers
who purchased the seed placed their technology licensing fee on an open account maintained by
their local retailer. The retailer was responsible for passing the licensing fee on to Monsanto once
the farmer had paid the amount then due.
      Plaintiffs brought suit alleging fraud, violations of the Texas Deceptive Trade Practices Act,
negligence, and negligent misrepresentation in August 1996 because the Bollgard plant did not
perform according to Monsanto’s representations. In October, a separate, national class action
was filed in Louisiana (Ren-Dan Farms), seeking recovery for similar claims relating to the 1996
growing season. Ren-Dan Farms, et. al. v. Monsanto Company, et. al., Docket No. 68466 (10th
Judicial District Court, Natchitoches Parish, Louisiana). Many of the farmers refused to pay the
fees due under the technology licensing agreements. In November and December, Monsanto sent
collection letters to 108 Texas farmers which stated, “all accounts not paid as of September 1,
1996 are assessed a finance charge of 14% per annum.” Based on these collection letters,
Plaintiffs amended their petition, adding a usury claim in August 1997. In November, Monsanto
sent out a “corrective action letter” to 100 of the farmers from whom they had not received
complaints regarding the finance charge. This letter was designed to withdraw the interest charge.
      In May 1998, Ren-Dan Farms reached settlement, and a notice was sent to the potential class
members, including the members of this suit. The notice included the statement,
If the proposed settlement is submitted to and approved by the Court, a final judgment
will be entered which will dismiss the Action in its entirety, with prejudice, and without
costs to any party as against any other party. The Court may also make an incentive
award to the Class Representatives. The final judgment, whether favorable or not, will
be binding upon all members of the Settlement Class who did not choose to opt out, and
will extinguish all claims, rights and remedies which the Class Members might assert
against the Defendants that are related to the subject matter of the Action.
      The class representatives of this case opted out of the Ren-Dan Farms suit. The Louisiana
court signed the final judgment of the national suit in July of 1998.PERTINENT AUTHORITIES
      This court has jurisdiction to hear an appeal from class certification by statutory grant. Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(3) (Vernon Supp. 2003).
      A plaintiff has no right to bring a lawsuit as a class action. Sun Coast Resources, Inc. v.
Cooper, 967 S.W.2d 525, 529 (Tex. App.— Houston [1st Dist.] 1998, pet. dism’d w.o.j.). 
Rather, to achieve class status, the proponent of the claim must first satisfy the four threshold
requirements set forth in Rule of Civil Procedure 42(a): (1) numerosity (the class is so numerous
that joinder is impracticable); (2) commonality (there are common questions of fact and law); (3)
typicality (the representative’s claims are typical of the class); and (4) adequacy of representation
(the representative parties will protect the interests of the class).


 Tex. R. Civ. P. 42(a);
Southwestern Refining Co. v. Bernal, 22 S.W.3d 425, 433-34 (Tex. 2000); Sun Coast Resources,
967 S.W.2d at 529. Additionally, the class action must satisfy at least one of the four categories
found in Rule 42(b).


 Tex. R. Civ. P. 42(b); Southwestern Refining Co., 22 S.W.3d at 433-34;
Sun Coast Resources, 967 S.W.2d at 529.
      A cautious approach to certification is essential. Schein v. Stroboe, 46 Tex. Sup. Ct. J. 103,
111-12, 2002 WL 31426407, at *10 (2002); Bernal, 22 S.W.3d at 434-35. The Court in Bernal
resoundingly rejected the approach of “certify now and worry later.” Id. Trial courts must
perform a “rigorous analysis” in determining whether the prerequisites to certification are
satisfied. Id. We review the court’s certification decision for an abuse of discretion. General
Motors Corp. v. Bloyed, 916 S.W.2d 949, 955 (Tex. 1996); Sun Coast Resources, 967 S.W.2d
at 529. We do not indulge every presumption in favor of the trial court’s ruling. Schein, 46 Tex.
Sup. Ct. J. at 111-12, 2002 WL 31426407, at *10; Bernal, 22 S.W.3d at 434-35. A trial court
abuses its discretion when ruling on class certification if it (1) does not properly apply the law to
the undisputed facts, (2) acts arbitrarily or unreasonably, or (3) rules upon factual assertions not
supported by the record. Spera v. Fleming, Hovenkamp & Grayson, 4 S.W.3d 805, 810 (Tex.
App.—Houston [14th Dist.] 1999, no pet.); Sun Coast Resources, 967 S.W.2d at 529.
TYPICALITY
      The Defendants argue in their fifth point that the Plaintiffs fail to meet the prerequisite of
typicality because their claims are not subject to the same defenses as those of the unnamed
plaintiffs. We agree. Rule 42(a) requires the putative class representative to show typicality–the
claims or defenses of class representatives are typical of the claims or defenses of the class. 
Rainbow Group, Ltd. v. Johnson, 990 S.W.2d 351, 356 (Tex. App.—Austin 1999, pet. dism’d
w.o.j.). To be typical of the class, the named plaintiffs must possess the same interest and suffer
the same injury as the rest of the class. Weatherly v. Deloitte & Touche, 905 S.W.2d 642, 653
(Tex. App.—Houston [14th Dist.] 1995, writ dism’d w.o.j.). Their claims must arise from the
same event or course of conduct giving rise to the claims of the other class members and must be
based on the same legal theory. Id. The presence of even an arguable defense peculiar to a subset
of the putative class members destroys typicality. Id.; Adams v. Reagan, 791 S.W.2d 284, 290
(Tex. App.—Fort Worth 1990, no writ).
      Here, the Defendants have presented arguable defenses which are peculiar to a subset of the
Plaintiffs: res judicata, release, and accord and satisfaction. The notice of settlement for the Ren-Dan Farms suit, which the Plaintiffs received, contained the above quoted global release clause. 
The unnamed Plaintiffs, unlike the named Plaintiffs, failed to opt out of the Ren-Dan Farms suit. 
The global release may have the effect of precluding any and all future claims by the class
members who participated (did not opt out of) in that settlement. Such a release may preclude 
a claim of usury. Because the representative class members opted out of the Ren–Dan Farms suit,
they are not subject to the same defenses as the unnamed class members. Therefore, the
representative class members cannot fulfill the requirement of typicality. Accordingly, the court
abused its discretion by certifying the suit as a class action. We sustain the Defendants’ fifth
point.
      We reverse the class certification order and remand this cause for further proceedings. See
Becton Dickinson and Co. v. Usrey, 57 S.W.3d 488, 498 (Tex. App.—Fort Worth 2001, no pet.).
 
                                                                   REX D. DAVIS
                                                                   Chief Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Reverse and remand
Opinion delivered and filed December 31, 2002
Publish
[CV06]